CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* BROWN.

[Cite as *Cleveland Metro. Bar Assn. v. Brown,*

130 Ohio St.3d 147, 2011-Ohio-5198.]

*Attorney misconduct, including failing to keep a client informed, failing to promptly deliver funds that a client is entitled to receive, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation— Indefinite license suspension.*

(No. 2011-0821—Submitted June 21, 2011—Decided October 13, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-059.

_____

**Per Curiam.**

{¶ 1} Respondent, Shawn Javon Brown of Cleveland, Ohio, Attorney Registration No. 0079331, was admitted to the Ohio bar in 2005.

{¶ 2} In November 2009, we suspended Brown for failing to register with the Office of Attorney Services for the 2009/2011 biennium, as required by Gov.Bar R. VI. *In re Attorney Registration Suspension of Brown*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. Brown is still under this suspension.

{¶ 3} Between June 29, 2009, and January 14, 2010, three separate grievances were filed against Brown with relator, Cleveland Metropolitan Bar Association. On July 14, 2009, and February 16, 2010, Brown submitted cursory responses to these grievances to relator. Brown was deposed by relator on March 10, 2010.

{¶ 4} On June 14, 2010, relator filed a three-count complaint with the Board of Commissioners on Grievances and Discipline charging Brown with professional misconduct. The charged misconduct arose from his alleged (1)

neglect of client matters, (2) failure to communicate with clients and respond to their requests for information, (3) failure to properly maintain and deliver client funds and property, (4) failure to provide competent representation, and (5) conduct involving dishonesty, fraud, deceit, or misrepresentation.

{¶ 5} The board sent notice of relator's complaint to Brown and requested his written answer within 20 days of June 17, 2010. The board, however, was unable to serve Brown at his place of employment or his residence. The board thereafter perfected service on September 7, 2010, through the clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B) (clerk is agent for attorney who conceals his or her whereabouts).

{¶ 6} Brown did not file an answer to the complaint. On February 14, 2011, relator filed a motion for default judgment pursuant to Gov.Bar R. V(6)(F). In support of its motion for default, relator submitted affidavits of the grievants, affidavits of two of relator's staff attorneys, letters from Brown to relator acknowledging that he was aware of the grievances filed against him, and a transcript of Brown's deposition. Relator also submitted evidence showing that between late November and early December 2010, Brown communicated with relator through a series of telephone calls and e-mails, showing that Brown had actual knowledge of the complaint filed against him and that he had missed the date for filing his answer with the board.

{¶ 7} A master commissioner appointed by the board granted relator's motion for default judgment, making findings of fact and conclusions of law that Brown had engaged in misconduct and recommending that he be permanently disbarred from the practice of law. The board adopted the master commissioner's findings of fact and conclusions of law. The board, however, disagreed with the recommendation that Brown should be permanently disbarred and instead recommended that he be indefinitely suspended.

**{¶ 8}** We adopt the board's findings of fact and conclusions of law and its recommendation of an indefinite suspension. We further order that Brown's indefinite suspension be served consecutively to his attorney-registration suspension, meaning that he cannot petition for reinstatement until two years from the date he resolves his attorney-registration suspension.

### Misconduct

*Count One (The Stewart Matter)*

**{¶ 9}** In February 2009, Marilyn J. Stewart hired Brown to file a motion to modify child support on her behalf. Stewart wanted to increase the amount of child support she was receiving so that her children would be able to remain in a childcare program at their school. Stewart paid Brown a $700 fee for the first five hours of work. Brown, however, assured Stewart that he would not require five hours of legal work to resolve the matter and that he would return any unused funds to her. Brown also promised Stewart that he would provide a weekly accounting of the services rendered, amount billed, and remaining balance, but he never did.

**{¶ 10}** Brown told Stewart that he had filed her petition with the court when in fact he had not. Stewart, relying on Brown's representations, committed to making payments to the school's childcare program. As a result of Brown's failure to take any action regarding Stewart's child-support matter, she was eventually unable to make the necessary payments to the school, and her children could not be enrolled in the childcare program for the following school year.

**{¶ 11}** Stewart made numerous attempts to contact Brown, but he never returned her calls. On May 6, 2009, Stewart sent Brown a letter by certified mail expressing her dissatisfaction with his conduct and requesting an update on her case and the weekly ledgers that he had promised her. Stewart received no response to her letter. Stewart sent a second certified letter to Brown on June 10,

2009, terminating the attorney-client relationship and requesting a full refund of the $700 fee that she had paid him.

{¶ 12} On July 14, 2009, relator received a letter from Brown in response to Stewart's disciplinary grievance. In his letter, he conceded that he had let "Ms. Stewart's concerns slip[] thru [sic] the cracks * * * [and he agreed to] refund her retainer in full." Brown stated that he had "no excuse for neglecting Ms. Stewart's matter" and offered to "perform the work requested free of charge and cover all expenses necessary." On March 10, 2010—nearly eight months later—Brown gave a deposition during which he admitted that he still had not returned Stewart's $700. He again stated that he would return the money, but there is no evidence in the record that he has done so.

{¶ 13} The board found, and we agree, that Brown violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to promptly comply with a client's reasonable requests for information), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count Two (The Green Matter)*

{¶ 14} In February 2009, Mamie-LeeShaun Green paid Brown $400 in cash to represent her in a bankruptcy matter. Brown did not communicate with Green for several months after he accepted the $400, despite Green's attempts to contact him. It was only after Green contacted Brown's family that she was able to reach him.

{¶ 15} In June 2009, Brown met with Green in her home to discuss her bankruptcy. At that time, Green paid Brown $100 for services he had provided to her in an unrelated case. During the meeting, Brown claimed to have filed a bankruptcy petition on Green's behalf. He also told Green that two of her

creditors were disputing the amounts of the debts, and he requested information from Green regarding these creditors, which Green provided. In addition, Brown told Green that he had spoken to the bankruptcy judge about her case and that the judge required that Green take a credit-counseling class. Brown said that he would put information about the class in Green's mailbox the next day. Green never received the credit-counseling information, and she never saw Brown again.

{¶ 16} Green made numerous attempts to contact Brown, but was unable to get a response for several months. In early November 2009, Green sent him an e-mail requesting information about her bankruptcy case and asking him to return her fee if he was not willing to continue as her attorney. On November 12, 2009, Brown replied with an e-mail stating that he would provide Green with a copy of her bankruptcy petition the following Tuesday.

{¶ 17} Green subsequently went to bankruptcy court and learned that Brown had never filed a bankruptcy petition. She sent him another e-mail on December 15, 2009, demanding that he refund her $400. Brown has not returned Green's file or her $400 fee.

{¶ 18} During Brown's deposition, he admitted that he has never been admitted to practice in bankruptcy court, has no bankruptcy-law experience, does not have electronic-filing privileges for bankruptcy court, and was not aware that the filing fee for a bankruptcy petition is $300.

{¶ 19} The board found that Brown's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(d), and 8.4(c). We agree and adopt these findings of misconduct.

*Count Three (The Walling Matter)*

{¶ 20} In January 2008, Jeffrey Walling, who owned a debt-collection company, hired Brown to collect a judgment on behalf of Walling's client, ABC Bail Bonds, Inc. ABC Bail Bonds had previously obtained a judgment in the Lyndhurst Municipal Court against a James Vojtech for over $101,000, and

Vojtech's wages were being garnished to pay the award, but Walling wanted Brown to pursue other debt-collection methods. Brown had no written fee agreement with Walling. Brown and Walling did have an oral fee agreement that allowed Brown to collect the garnishment checks, deduct a portion for his fee, and turn over the balance to Walling.

{¶ 21} Brown collected approximately $3,700 in garnishment checks, but never paid any money to Walling. Brown claimed that the garnishment proceeds covered his legal fees and that nothing was left over, but he failed to provide a billing statement or any other explanation of work performed for Walling on behalf of ABC Bail Bonds that the garnishment proceeds went toward. In addition, during his deposition, Brown conceded that he had never maintained a client trust account and that he had deposited the funds collected on behalf of ABC Bail Bonds into his personal bank account.

{¶ 22} With respect to the above misconduct, the board found that Brown had violated Prof.Cond.R. 1.4(a)(3), 1.4(a)(4), 1.15(a) (requiring a lawyer to hold property of clients or third persons separate from the lawyer's own property in a client trust account), 1.15(d), and 8.4(c). We agree that Brown engaged in the above misconduct and therefore adopt the board's findings.

**Sanction**

{¶ 23} In recommending a sanction, the master commissioner considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The master commissioner found, as aggravating factors, that Brown had engaged in a pattern of misconduct involving multiple offenses. BCGD Proc.Reg. 10(B)(1)(c) and (d). He also noted that Stewart and Green were vulnerable clients that Brown had taken advantage of and harmed. BCGD Proc.Reg. 10(B)(1)(h). Finally, the

master commissioner found that Brown had failed to make restitution to any of the aggrieved clients. BCGD Proc.Reg. 10(B)(1)(i).

{¶ 24} In mitigation, the master commissioner noted that Brown was suspended in 2009 for failing to register, but nevertheless found that his "absence of a prior disciplinary record" qualified as a mitigating factor. See BCGD Proc.Reg. 10(B)(2)(a). The master commissioner ultimately concluded, however, that Brown's lack of a prior disciplinary record did not mitigate his misconduct in these matters.[1] No other mitigating factors were found.

{¶ 25} Relator recommended that Brown be permanently disbarred. The master commissioner also recommended disbarment. The board, however, disagreed. The board concluded that an indefinite suspension was a more appropriate sanction based on the entire record, including the fact that Brown had been in the practice of law for only a few years. The board further recommended that Brown be required to pay restitution to the three clients.

{¶ 26} Having reviewed the record, we agree that an indefinite suspension is the appropriate sanction in this case.

{¶ 27} Accordingly, Shawn Javon Brown is indefinitely suspended from the practice of law in the state of Ohio. We further order that his indefinite suspension run consecutively to his attorney-registration suspension. We also order that Brown pay restitution to the three clients harmed by his misconduct within 60 days. Costs are taxed to Brown.

Judgment accordingly.

---

1. The master commissioner erred in finding that Brown had no prior disciplinary record. See, e.g., *Columbus Bar Assn. v. Larkin*, 128 Ohio St.3d 368, 2011-Ohio-762, 944 N.E.2d 669, ¶ 9; *Disciplinary Counsel v. Mitchell*, 124 Ohio St.3d 266, 2010-Ohio-135, 921 N.E.2d 634, ¶ 8; and *Akron Bar Assn. v. Paulson*, 112 Ohio St.3d 334, 2006-Ohio-6678, 859 N.E.2d 932, ¶ 12 (all recognizing attorney-registration violations as prior disciplinary offenses pursuant to BCGD Proc.Reg. 10(B)(1)(a)). But because the master commission gave no weight to this factor in mitigation, the error is harmless.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Heather M. Zirke, Andrew Geronimo, and David O. Simon, for relator.

_____